IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


WILLIAM W. LIBECCO,                    )
                    Plaintiff,         )
                                       )
         v.                            )         Civil Action No. 08-51
                                       )
                                       )
COMMISSIONER OF SOCIAL                 )
SECURITY,                              )
                    Defendant.         )


REPORT AND RECOMMENDATION

I.    Recommendation

      It is respectfully recommended that the plaintiff's motion for summary judgment (Docket

No. 10) be denied; that the defendant's motion for summary judgment (Docket No. 13) be

granted; that the decision of the Commissioner be affirmed and that judgment be entered

accordingly.

II.   Report

      Presently before the Court for disposition are cross motions for summary judgment.

      On  January 11, 2008, William W. Libecco by his counsel, filed a complaint pursuant to

Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the

Commissioner's final determination disallowing his claim for a period of disability or for

disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as

amended, 42 U.S.C. §§416(i) and 423.

      On April 15, 2005, the plaintiff filed an application for disability benefits alleging that he

had been disabled since September 25, 2003 (R.54-56), and benefits were denied on August 26,

2005 (R.39-43).  On October 21, 2005, the plaintiff requested a hearing, and pursuant to that request a hearing was held on April 13, 2007 (R.417-438).  In a decision dated May 21, 2007, benefits were denied (R.16-29), and on June 7, 2007, reconsideration was requested (R.14). Upon reconsideration and in a decision dated November 20, 2007, the Appeals Council  affirmed the prior determination (R.6-9). On June 11, 2008,  the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v.  Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is '"more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

At the hearing held on April 13, 2007, (R.417-438), the plaintiff appeared with counsel (R.419) and testified that he was born on October 16, 1957 (R.421); that he completed the ninth grade and earned a G.E.D. (R.420-421); that he worked as a technician and laborer (R.423-424) and that he last worked in June 2003 when he suffered a heart attack (R.422).

2

The plaintiff also testified that he experiences neck and upper back pain (R.424, 428); that he was experiencing heart seizures until a pacemaker was implanted (R.424); that he can attend to his own needs (R.426. 429); that he can lift up to ten pounds, sit for about forty minutes and walk for about thirty minutes (R.428, 433) and that he takes medication for pain and depression (R.427, 429-430).

At the hearing a vocational expert was called upon to testify (R.435-438). She summarized the plaintiff's past work as medium to very heavy unskilled to skilled work (R.435-436). When asked to assume an individual of the plaintiff's education, training and work experience who was able to perform work at the light exertional level, the witness replied that while that individual could not perform the plaintiff's past work activities, he could be gainfully employed in a large range of other occupations (R.436-437). However, if the individual could not concentrate due to his medication or required frequent breaks from his work activity, the witness testified he could not be employed (R.437-438).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. <u>NLRB</u> v. <u>Staiman Brothers</u>, 466 F.2d 564 (3d Cir. 1972); <u>Choratch</u> v. <u>Finch</u>, 438 F.2d 342 (3d Cir. 1971); <u>Woods</u> v. <u>Finch</u>, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was hospitalized at Allegheny General Hospital from January 12, 2003 through January 15, 2003 for in inferior wall myocardial infarction. A stent was implanted and the plaintiff was placed on medication (R.140-160).

The plaintiff was treated at Valley Neurology, Inc. between July 1, 2004 and December 30, 2004 for dizziness (R.161-163).

The plaintiff was treated at the Butler Memorial Hospital between March 4, 2003 and March 17, 2005 for recurrent chest pain. Catheterization and re-stenting were performed (R.164-177).

The plaintiff was hospitalized at Butler Memorial hospital from March 17, 2005 through March 18, 2005 for chest pain. A repeat shunt placement was performed (R.178-198).

The plaintiff was treated at the Armstrong County Memorial Hospital between January 12, 2003 and March 23, 2005 for chronic back pain and an acute inferior wall myocardial infarction for which he was transferred to Allegheny General Hospital (R.199-221).

The plaintiff was hospitalized at Butler Memorial Hospital from April 5, 2005 through April 6, 2005 for unstable angina (R.222-267).

The plaintiff was evaluated by Dr. Edward Balestrino on May 11, 2005 for neck and back pain (R.268-271).

The plaintiff was treated at Sabbish Cardiology Associated, Ltd. between October 6, 2003 and June 27, 2005 at which time his cardiologist reported that he was doing well, however, a small C6-T1 and T1-T2 bulge was noted (R.222-287).

In a report of an examination conducted on August 9, 2005, Dr. David Evanko noted chronic cervical pain due to osteoarthritis and disc disease and coronary artery disease with a history of a heart attack and stent placement (R.288-291).

After reviewing the medical evidence and in a residual functional capacity assessment completed on August 25, 2005, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.292-299).

The plaintiff was treated between December 30, 2004 and October 7, 2005 by Dr. Elliot Michael who diagnosed a history of lightheadedness, twenty-two year old cervical disc rupture and insomnia of undetermined etiology (R.300-305).

The plaintiff was treated by Dr. Richard A. Mercuric between May 25, 2005 and March 15, 2006 for chronic depression and back pain. On March 15, 2006, the doctor stated that the plaintiff could not be gainfully employed (R.308-333).

In a report dated May 4, 2006 it is noted that the plaintiff suffers from chronic pain and sleep disorders (R.334).

In a statement dated May 1, 2006, it is noted that the plaintiff had been attending bi-weekly outpatient therapy at Butler Memorial Hospital (R.335).

The records of the Butler Memorial hospital for the period from February 21, 2006 through October 13, 2006 disclose treatment for chronic back and neck pain, depression and anxiety (R.336-349).

A cervical MRI performed on October 31, 2006 revealed a previous C5 through C7 fusion, mild spinal stenosis due to a disc osteophyte at C7-T1 and mild stenosis at C3-4 and C4-5.(R.350-351).

The plaintiff was hospitalized at Butler Memorial Hospital from December 27, 2006 through December 28, 2006 for a pacemaker implantation (R.352-357).

Medical information for the period from June 6, 2005 through January 6, 2007 demonstrates treatment for heart rhythm irregularities and a resulting pacemaker insertion (R.358-382).

The plaintiff was treated by Dr. Richard A. Mercuric between October 7, 2005 and January 21, 2007 following a heart attack. The plaintiff also had an abdominal lipoma excised (R.383-407).

The plaintiff had a study performed on April 6, 2007 which could not determine the reason for his reduced tibial nerve conduction. Mild to moderate L4-5 bulging and a moderate L5-S1 disc protrusion were noted (R.408-411).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of

Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The claimant in this case has undergone spinal fusion in the remote past, with the fusion being described as stable. He has some limited range of motion in the cervical spine due to the fusion surgery ... [the claimant has] partial conduction block of the motor branch of the left ulnar nerve at the wrist and slowing of all F wave responses were compatible with multi-level cervical disc disease. However, the claimant does not demonstrate the functional limitations and have the objective findings required by any of the musculoskeletal listings...

The claimant has also been diagnosed with hypertension and coronary artery disease and had a myocardial infarction ... Since that time he has required stenting of an occluded artery with resenting of the same artery when the occlusion reoccurred. In addition, the claimant underwent implantation of a pacemaker ... after he was diagnosed with sick sinus syndrome. However, the claimant's blood pressure was stable with medication during this time, and he only briefly had

diminished left ventricular ejection fraction values.  The objective medical records over time have not shown findings which would satisfy any listing contained in Section 4.00, which deals with cardiovascular disease.

As for the claimant's diagnosed depression, I must note that there are no mental health treatment records prior to February 2006, when the claimant went for an initial psychiatric evaluation.  At that time, the claimant was diagnosed with depression secondary to his physical impairments ...  The described symptoms, which are consistent with a mood disorder, would satisfy paragraph A of listing 120.04. However, the claimant does not demonstrate marked to equivalent limitation in two of the four broad areas of functioning listed in paragraph B of the listing, and he does not satisfy the alternative paragraph C criteria as described in the listing... Therefore, listing level severity has not been demonstrated in this case.

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work ... [with some limitations] (R.22-23).

The record demonstrates that the plaintiff had a spinal fusion performed many years ago, and it causes only minor limitations in motion. In addition, he has some slight limitations imposed by later spinal deterioration, but in no way are these conditions disabling. Additionally, while he experienced a heart attack and subsequently underwent stenting and pacemaker implantation, these conditions do not render him disabled under the Commissioners guidelines. Finally, he alleges depression. While the latter is of recent onset, it too is not disabling but rather reflects mood changes due to his other conditions. Thus, either individually or in combination, the plaintiff's ailments fail to demonstrate that the determination of the Commissioner is not supported by substantial evidence.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir.2004).  In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's  conclusion is supported by substantial evidence.  For this reason, it is

recommended that the plaintiff's motion for summary judgment be denied; that the defendant's motion for summary judgment be granted; that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

Within ten days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
United States Magistrate Judge

Dated: July 2, 2008.